# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
GREGORY BARTKO,                 )
                                )
              Plaintiff,        )
                                )
         v.                     )        1:13CV1006
                                )
CLAY CAMPBELL WHEELER,          )
et al.,                         )
                                )
              Defendants.       )
```

## MEMORANDUM OPINION AND ORDER

This case comes before the Court for review of venue after receipt of Plaintiff's Memorandum in Support of Choice of Venue (Docket Entry 5). For the reasons that follow, this case will be transferred to the United States District Court for the Eastern District of North Carolina under 28 U.S.C. § 1406(a).[1]

---

[1] "[A] Magistrate Judge is empowered to issue the transfer order, which is non-dispositive, without the approval of the District Court." Scheafnocker v. Commissioner of Internal Revenue Serv., 642 F.3d 428, 433 n. 6 (3d Cir. 2011), vacated in light of facts eliminating the plaintiff's standing, No. 08-2655, 2012 WL 1854183 (3d Cir. Apr. 24, 2012) (unpublished); accord IHFC Props., LLC v. APA Mktg., Inc., 850 F. Supp. 2d 604, 622 (M.D.N.C. 2012) (Schroeder, J.); Century Furniture, LLC v. C & C Imports, Inc., No. 1:07CV179, 2007 WL 2712955, at 1 n. 1 (W.D.N.C. Sept. 14, 2007) (unpublished); Surotchak v. Apfel, No. Civ. A. 98-0073-C, 1999 WL 301705, at *1 (W.D. Va. Feb. 8, 1999) (unpublished). However, "a [district] judge . . . may reconsider any pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); see also Fed. R. Civ. P. 72(a) ("A party may serve and file objections to the order [of a magistrate judge] within 14 days after being served with a copy. . . . The district judge in the case must consider timely objections and modify or set aside any
(continued...)

A jury in the United States District Court for the Eastern District of North Carolina found Plaintiff guilty of various fraud-related federal offenses and, as a result, he received a prison sentence of 272 months. See United States v. Bartko, 728 F.3d 327, 331 (4th Cir. 2013). At the time of the offense conduct, Plaintiff "was a securities attorney, investment banker, and registered broker/dealer." Id. at 332. Plaintiff appealed his convictions, but the United States Court of Appeals for the Fourth Circuit affirmed. See id. at 331-32. In so doing, however, the Fourth Circuit criticized "the discovery practices of the United States Attorney's Office in the Eastern District of North Carolina." Id. at 341; see also id. at 343 ("What we know is that we are repeatedly confronted with charges of discovery abuse by this office. What we know is that our questions regarding this abuse remain unanswered. And what we know is that such conduct is unacceptable. Appropriate actions need to be taken to ensure that the serious errors detailed herein are not repeated. Whatever it takes, this behavior must stop.").

---

[1](...continued)
part of the order that is clearly erroneous or is contrary to law."). Accordingly, the transfer will be stayed temporarily so that Plaintiff's right to object does not become moot. In light of the decision to transfer, action on Plaintiff's Application to Proceed In Forma Pauperis (Docket Entry 1) and his Motion for CM/ECF Password (Docket Entry 6), as well as the task of screening under 28 U.S.C. § 1915A, will be deferred to the transferee court.

Plaintiff thereafter commenced this case in this Court by filing pro se an Application to Proceed In Forma Pauperis (Docket Entry 1) and a Complaint (Docket Entry 2). According to the Complaint, Plaintiff "brings this civil action, not to collaterally attack his conviction[s] by asserting that his constitutional rights were violated, but to recover damages, and obtain other equitable relief, proximately caused by [] Defendants' obstruction of justice contrary to the common law of the state of North Carolina." Id. at 1-2. The Complaint identifies as Defendants: 1) Clay Wheeler, a former Assistant United States Attorney in the Eastern District of North Carolina (id., ¶ 4); 2) George Holding, a former United States Attorney for the Eastern District of North Carolina (id., ¶ 5); 3) Thomas Walker, the current United States Attorney for the Eastern District of North Carolina (id.); and 4) Scott Hollenbeck, "a former client of [Plaintiff's] law firm [who] was called as a key government witness to testify at [Plaintiff's] criminal trial" (id., ¶ 6).

It purports to state four claims: 1) "Common Law Obstruction of Justice Against Wheeler" (id., ¶¶ 31-50); 2) "Obstruction of Justice Against Holding and Walker" (id., ¶¶ 51-61); 3) "Civil Conspiracy to Obstruct Justice Against All Defendants" (id., ¶¶ 62-74); and 4) Declaratory Judgment for Obstruction of Justice (id., ¶¶ 75-78). The Complaint further asserts that "[t]his Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

-3-

[§] 1332 as there is complete diversity of citizenship between []
Plaintiff and [] Defendants . . . [and Plaintiff] seeks monetary
damages in this action for his personal and property losses that
exceeds [sic] $1,450,000 . . . ." (Id., ¶ 9.)[2] According to the
Complaint, "[p]ursuant to 28 U.S.C. [§] 1391(b), venue is proper in
this district since Wheeler's firm's registered office is in
Winston-Salem, North Carolina and many of the tortious acts,
practices and obstructive conduct described in this Complaint took
place within the Middle District of North Carolina." (Id.)[3]

Under the heading "Factual Allegations in Common," the
Complaint sets out 23 paragraphs/subparagraphs of assertions, most
of which fairly qualify as conclusory or fail to offer factual
matter regarding Defendants. (Id., ¶¶ 15-30.)[4] Relevant to the
issue of venue, that section of the Complaint acknowledges that
"[t]he objects of the Civil Conspiracy and Wheeler's acts of
intentional obstruction of justice were targeted towards the

---

[2] As to citizenship, the Complaint identifies Plaintiff as a
resident of a federal prison in Mississippi (Docket Entry 2, ¶ 1),
but "as a citizen of the state of Georgia (id., ¶ 2). It further
describes Wheeler, Holding, and Walker as citizens of North
Carolina (id., ¶¶ 10, 12) and Hollenbeck as "a citizen for
jurisdictional purposes of the state of Florida" (id., ¶ 11).

[3] The Complaint alleges that Wheeler left the United States
Attorney's Office for the Eastern District of North Carolina on May
31, 2011, and "is believed to have become a limited partner in the
law firm of Kilpatrick Townsend & Stockton, LLP." (Docket Entry 2,
¶ 4 (internal parenthetical omitted).)

[4] One paragraph contains seven subparagraphs. (See Docket
Entry 2, ¶ 27(A) - (G).)

criminal prosecution of [Plaintiff] <u>in the EDNC</u> [Eastern District of North Carolina]." (<u>Id.</u>, ¶ 17 (emphasis added).) Moreover, in terms of non-conclusory assertions regarding Defendants, the Factual Allegations in Common section references only one matter linked to the Middle District of North Carolina: "Wheeler personally interviewed [a state judge] on September 29, 2009 in Winston-Salem . . . who supervised the receivership litigation [arising from some of Hollenbeck's fraudulent investment activity] wherein [Plaintiff] appeared as co-counsel . . . ." (<u>Id.</u>, ¶ 27(A).) This section of the Complaint, however, does not assert that said interview itself constituted part of Wheeler's alleged obstruction of justice or any related conspiracy among Defendants; instead, it contends "[t]hat Wheeler caused to be prepared a written interview report intended to summarize [the state judge's] statements during the interview, which report contained information favorable to [Plaintiff's] defense . . . [but] Wheeler <u>failed to provide this information</u> to [Plaintiff] and <u>in fact intentionally concealed the report</u> until several months after his conviction[.]" (<u>Id.</u>, ¶ 27(B) (emphasis added).)

Given that Plaintiff's prosecution occurred in the Eastern District of North Carolina, Wheeler's alleged suppression of the foregoing report represents decision-making (whether characterized as action or omission) that took place in that district (at least in the absence of any plausible contrary allegations). The

remainder of the non-conclusory (and even the conclusory) factual matter concerning Defendants in the Complaint's "Factual Allegations in Common" section similarly appears to involve actions or omissions committed in the Eastern District of North Carolina. (See id., ¶¶ 15-30.) For example, within that section, the Complaint alleges that:

1) "Holding and Walker were responsible for the management, implementation and formation of prosecutorial guidelines and policies within the EDNC" (id., ¶ 23 (emphasis added));

2) "Holding and Walker fostered an atmosphere within the EDNC which enabled Wheeler and other AUSAs [Assistant United States Attorneys] within the criminal division of the EDNC to avoid and circumvent adherence to the requirements of formal DOJ [Department of Justice] policies and procedures and well established federal and constitutional principles governing disclosure of exculpatory and impeachment information to defendants charged with criminal offenses within the EDNC" (id., ¶ 25 (emphasis added));

3) "Wheeler concealed and failed to disclose to [Plaintiff] the Hollenbeck immunity contracts . . . [as well as the fact] that Hollenbeck testified falsely during [Plaintiff's] trial when he denied having received any promises from Wheeler" (id., ¶ 27(C) (emphasis added));

4) "Wheeler failed to disclose and actually concealed the existence of . . . Tolling Agreements [with] and the threats of

prosecution made to Levonda Leamon prior to her testimony at [Plaintiff's] trial" (id., ¶ 27(D) (emphasis added));

5) "Wheeler failed to disclose and reveal to [Plaintiff] a certain unidentified grand jury transcript that was only identified by Wheeler months after trial and later by [another Assistant United States Attorney in the Eastern District of North Carolina] as consisting of potential Brady Material" (id., ¶ 27(E) (emphasis added)); and

6) "Wheeler consciously withheld the Brady Material from the open file materials [Plaintiff] had access to" (id., ¶ 27(F) (emphasis added)).

That pattern of focusing on events or decision-making occurring in the Eastern District of North Carolina persists within the next section of the Complaint, entitled "Count I – Common Law Obstruction of Justice Against Wheeler." (Id., ¶¶ 31–50.)[5] Specifically, the Count I section alleges that:

1) "Wheeler initiated a criminal investigation of [Plaintiff] as a result of personal animus" (id., ¶ 32(A) (emphasis added); see

---

[5] As with the prior section of the Complaint, a number of paragraphs within Count I lack non-conclusory factual matter. (See, e.g., Docket Entry 2, ¶¶ 33 (describing Wheeler's alleged duties regarding witness interviews), 35 (asserting that Wheeler's pre-indictment conduct was not "prosecutorial"), 39 (characterizing Wheeler's actions as "non-prosecutorial" and "not protected by the doctrine of absolute prosecutorial immunity"), 49 (reiterating general contention that all of Wheeler's conduct occurred "with the intent and design by [him] to prevent, obstruct, impede and hinder the administration of public or legal justice"), 50 (setting forth amount of loss Plaintiff "believes that he has sustained").

also id., ¶ 32(C) (attributing Wheeler's prosecution decision to "personal animus and vindictive motives"));

2) Wheeler "<u>ma[de] express misrepresentations to [Plaintiff's] trial judge</u>," "<u>conceal[ed]</u> the fact of [the] interview [with the state judge]," and "<u>misle[d] [Plaintiff's] legal counsel</u> about the true nature of Wheeler's investigation, the status of the investigation, and Wheeler's willingness to consider exculpatory information" (<u>id.</u>, ¶ 32(B) (emphasis added));

3) "Holding blithely and falsely stated <u>in a press release</u> following [Plaintiff's] conviction that: '[Plaintiff] had evaded SEC [United States Securities and Exchange Commission] audits, avoided examination by the bar association, and managed to fool nearly everyone'" (<u>id.</u>, ¶ 32(K) (emphasis added));

4) Wheeler "specifically <u>intended</u> to obstruct, impede, prevent and hinder the gathering of evidence from potential trial witnesses <u>through a series of written instructions</u> on how to conduct the call interviews" (<u>id.</u>, ¶ 34 (emphasis added));

5) "rather than investigating and discovering the truth, <u>Wheeler had reached his conclusions</u> long before his access to any statements given to the FBI [Federal Bureau of Investigation] by . . . important government witnesses" (<u>id.</u>, ¶ 37 (emphasis added); <u>see also</u> <u>id.</u>, ¶ 36 (asserting that Wheeler reported conclusions about Plaintiff's culpability when "he formally requested the investigatory assistance of the FBI");

6) "Wheeler has <u>never disclosed</u> to [Plaintiff] at anytime the existence of the Leamon Tolling Agreement [or] his threats or statements to Leamon or her counsel reflecting Wheeler's intent to prosecute Leamon" (<u>id.</u>, ¶ 43 (emphasis added)); and

7) "[a]n evidentiary <u>hearing was conducted in [Plaintiff's] Criminal case</u> . . . to determine whether [he] should be granted a new trial . . . [and] <u>Wheeler</u> was subpoenaed . . ., but he <u>refused to testify</u> concerning any of the circumstances surrounding his [prior] interview of [the state judge] and the preparation of the written interview summary" (<u>id.</u>, ¶¶ 47-48 (emphasis added)).

The Complaint's Count I section does describe some matters that allegedly took place (at least in part) in a district other than the Eastern District of North Carolina; however, that other district is the Northern District of Georgia, not the Middle District of North Carolina. (<u>See</u> <u>id.</u>, ¶ 32(D)-(J) (recounting Wheeler's alleged improper interactions with administrative agency personnel in Atlanta, Georgia).) Beyond those Georgia-related activities and the above-referenced acts or omissions in the Eastern District of North Carolina, the Count I section focuses largely on events pertaining to Hollenbeck; more specifically, it charges that Wheeler made promises and offered "tacit assurances" to Hollenbeck (and his wife) regarding their cooperation in the prosecution of Plaintiff and that Wheeler concealed those commitments. (<u>See</u> <u>id.</u>, ¶¶ 32(L)-(S), 41.) Those allegations do

not identify the location where Hollenbeck and his wife received any such promises or assurances (see id.), but Wheeler's failure to timely disclose any such agreements, rather than the making of them, constitutes the purported obstruction of justice (see id.). Given that Wheeler prosecuted Plaintiff in the Eastern District of North Carolina and that his disclosure obligations thus existed there, the foregoing material aspects of Plaintiff's claims occurred in the Eastern District of North Carolina (again, at least absent plausible contrary allegations).

Virtually all of the remaining factual information within the Count I section of the Complaint relates to Wheeler's conduct after his departure from the United States Attorney's Office for the Eastern District of North Carolina,[6] in particular Wheeler's allegedly false "statements to [the Assistant United States Attorney who assumed responsibility for Plaintiff's case] . . .

---

[6] The lone exception concerns the conclusory allegation that Wheeler engaged in "undue coaching and shaping of witness interviews rife with threats and intimidation" (Docket Entry 2, ¶ 38), supported by one example that did not describe any "coaching" or "shaping" of witness testimony (see id. ("In one such interview conducted by Wheeler personally . . . with a key government witness, Wheeler yelled and lost his temper . . . and candidly revealed his anger over the fact that [Plaintiff] . . . received a fee award . . . for [his] successful handling of the receivership litigation."); see also id., ¶ 32(B) (asserting that Wheeler "ma[de] highly inflammatory and false statements to others about the unfairness of the award of legal fees in the Receivership stating his intent to prosecute [Plaintiff] . . . for 'fraud,' even making such statements during witness interviews . . . and threatening the receiver with prosecution . . . [and] forfeiture of [his] fee")). These allegations do not include any reference to the site of any such interview(s). (See id., ¶¶ 32(B), 38.)

that Wheeler's failures to disclose . . . Brady Material were inadvertent" (id., ¶ 44) and Wheeler's execution of an allegedly false, sworn declaration he knew "would become part of the record in the Criminal Case" (id., ¶¶ 45-46). The paragraphs in question do not purport to identify Wheeler's location at the time he uttered any such statements or executed any such declaration, but they do reflect that any resulting obstruction of justice occurred in the Eastern District of North Carolina. (See id., ¶¶ 44-46.)

The next section of the Complaint, "Count II. Obstruction of Justice Against Holding and Walker," similarly makes no reference to activity occurring in the Middle District of North Carolina, but does repeatedly (if only in conclusory fashion) allege that Holding and Walker engaged in conduct or culpable inaction in the Eastern District of North Carolina, both in Plaintiff's criminal case and in other criminal cases in that district. (See id., ¶¶ 51-61.) Nor does the section of the Complaint which follows, "Count III. Civil Conspiracy To Obstruct Justice Against All Defendants," allege that any pertinent events transpired in the Middle District of North Carolina. (See id., ¶¶ 62-74.) Instead, it:

1) conclusorily asserts the existence of a conspiracy among Defendants to obstruct justice by harming Plaintiff and helping Hollenbeck (id., ¶¶ 63-65);

2) generally describes actions allegedly taken in furtherance of the conspiracy (such as Hollenbeck "providing information to

Wheeler which was false and misleading," Wheeler "encourag[ing] and shap[ing] Hollenbeck's false and misleading statements," Wheeler "suppress[ing] and fail[ing] to disclose the nature of the false and misleading evidence," and Wheeler "manufactur[ing] and creat[ing] a false sworn declaration") (<u>id.</u>, ¶¶ 66-68; <u>see also</u> <u>id.</u>, ¶¶ 72-73 (repeating that Wheeler obstructed justice through his "execution and publication" of a false declaration and via "efforts undertaken to hinder [Plaintiff] and his trial judge from becoming aware of the promises made to the Hollenbecks, that Holding and Walker "fail[ed] to supervise, monitor and assure Wheeler's conduct was lawful," and that "Hollenbeck testified falsely at [Plaintiff's] trial");

3) purportedly summarizes the events that followed the belated disclosure of certain materials, including the denial of post-trial relief in the United States District Court for the Eastern District of North Carolina and of Plaintiff's appeal by the Fourth Circuit (albeit with criticism of the discovery practices of the United States Attorney's Office for the Eastern District of North Carolina) (<u>id.</u>, ¶¶ 69-71); and

4) reiterates Plaintiff's "belie[f] that he has sustained personal and property loss in an amount that exceeds $1,450,000" (<u>id.</u>, ¶ 74).

The next section of the Complaint, "Count IV. Declaratory Judgment For Obstruction of Justice," does not mention any activity

in the Middle District of North Carolina. (See id., ¶¶ 75-78.)
Moreover, it characterizes "[t]he allegations in this Complaint
[as] describ[ing] serious and pervasive prosecutorial misconduct
and discovery abuses arising from the EDNC . . . ." (Id., ¶ 76
(emphasis added).) The final substantive section of the Complaint,
"Plaintiff's Damages," also fails to identify any events occurring
in the Middle District of North Carolina. (See id., ¶¶ 79-85.)

In light of the paucity of non-conclusory allegations
supporting venue in this district, when the Complaint came before
the Court for screening (see Docket Entry dated Nov. 12, 2013), the
Court entered an Order stating, in pertinent part, as follows:

> The Complaint invokes the general venue provision set out
> in 28 U.S.C. § 1391(b). (Docket Entry 2, ¶ 9.) Under
> that provision, venue exists in "(1) a judicial district
> in which any defendant resides, if all defendants are
> residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of
> the events or omissions giving rise to the claim
> occurred, or a substantial part of property that is the
> subject of the action is situated; or (3) if there is no
> district in which an action may otherwise be brought as
> provided in this section, any judicial district in which
> any defendant is subject to the court's personal
> jurisdiction with respect to such action." 28 U.S.C.
> § 1391(b). However, because Defendant Walker is a
> current employee of the United States government sued in
> his individual and official capacity, § 1391(e) may
> apply, such that venue would exist "in any judicial
> district in which (A) a defendant in the action resides,
> (B) a substantial part of the events or omissions giving
> rise to the claim occurred, or a substantial part of
> property that is the subject of the action is situated,
> or (C) the plaintiff resides if no real property is
> involved in the action." 28 U.S.C. § 1391(e)(1).
>
> According to the Complaint, "venue is proper in this
> district since Wheeler's firm's registered office is in

Winston-Salem, North Carolina and many of the tortious acts, practices and obstructive conduct described in this Complaint took place within the Middle District." (Docket Entry 2, ¶ 9.) A review of the Complaint does not readily reveal support for the latter assertion and the applicable standards appear unconcerned with the former assertion.

"The district court of a district in which is filed a case laying venue in the wrong . . . district shall dismiss, or if it be in the interest of justice, transfer such case to any district . . . in which it could have been brought." 28 U.S.C.A. § 1406(a). "Although a motion by one of the parties is ordinarily required for transfer, the district court may consider the possibility of transfer sua sponte . . . [but generally must afford] an opportunity to be heard before a decision is rendered." <u>Feller v. Brock</u>, 802 F.2d 722, 729 n.7 (4th Cir. 1986). Therefore, the Court will order that, on or before December 20, 2013, Plaintiff submit a brief of no more than ten (10) pages addressing the question of venue, including why this case should not be transferred to the Eastern District of North Carolina.

(Docket Entry 4 at 2-4 (emphasis added).)

In response to that Order, Plaintiff filed the instant Memorandum in Support of Choice of Venue. (Docket Entry 5.) In it, he "contends that venue is proper in the MDNC [Middle District of North Carolina] . . . ." (<u>Id.</u> at 3 (internal parentheticals omitted).) In support of that position, Plaintiff "proffer[ed] the following factors which provide a nexus between the allegations in the Complaint and [this] district" (<u>id.</u>):

1) "[a] majority of the witnesses whom [Wheeler] personally interviewed . . . were resident [sic] of the MDNC and were interviewed by Wheeler at the United States Attorney's Office for the MDNC" (<u>id.</u> at 3-4; <u>see also</u> <u>id.</u> at 6 ("many of Wheeler's

-14-

witness interviews were conducted in the U.S. Attorney's Office for the MDNC"));

2) "activities, especially those of Wheeler, may have originated within the EDNC, but they clearly were directed to activities taking place within the MDNC" (id. at 4; see also id. at 8 ("[a]lthough the actions and inactions that [Plaintiff] alleges against Holding and Walker may have been manifested principally within the EDNC, their deliberate indifference to their supervisory, administrative and management responsibilities over Wheeler caused effects within the MDNC"));

3) "[p]rior to the interview [Wheeler conducted with a state judge in Winston-Salem], Wheeler instructed one or more federal agents to obtain a complete copy of the Forsyth County Receivership court file from the Forsyth County Superior Court Clerk" (id.);

4) "agreements were delivered by Wheeler to Hollenbeck's criminal defense counsel . . . who practiced law at the time in Durham, NC" (id. at 4-5);[7]

5) "[a]ll telephone, mail and email communications between Wheeler and [Hollenbeck's defense counsel] would have been conducted in the MDNC and EDNC" (id. at 5; see also id. ("Plaintiff believes that Wheeler had routine and continuous contact with [said defense counsel] leading up to [Plaintiff's] trial"));

_____

[7] Plaintiff, however, acknowledged that the Hollenbecks received and executed the agreements in question in Florida. (See Docket Entry 5 at 5.)

6) "Wheeler opposed [Plaintiff's] efforts at his sentencing hearing to subpoena Hollenbeck-related communications and tape recorded conversations that . . . were and still are located within the MDNC" (id.);

7) "Wheeler pressured Leamon with threats of indictment, which means it likely that such threats were communicated to Leamon or her counsel within the MDNC [because she resided there and] . . . retained legal counsel who conducted his law practice within the MDNC" (id.);

8) "Wheeler negotiated, prepared and executed a statute of limitations tolling agreement that he expected Leamon to sign; and delivered the agreement to Leamon and her counsel within the MDNC for approval and counter-execution . . . [and] repeated the process a second time so that Leamon and her counsel could approve an extension of the tolling agreement" (id.);

9) "[Plaintiff's] co-counsel in the Receivership . . . conducted his law practice at the time from his office located in Durham" (id. at 6);

10) "[u]pon discovery of Hollenbeck's continuing investment fraud activities in connection with [Plaintiff's] private equity fund . . ., [Plaintiff] filed an interpleader action in this Court" (id. at 7); and

11) "Wheeler's practice location is held out to the public as being located in [his firm's] Winston-Salem and Raleigh, NC offices

. . . [and thus his] practice was co-terminus with the MDNC and EDNC when he provided the false or misleading declaration" (id.; see also id. at 8 n.2 ("Wheeler remains listed in the docket sheet on the CM/ECF System for the EDNC under the heading, "U.S. Attorneys" . . . designated as lead attorney . . . with [his] firm's Raleigh, NC office address listed but Wheeler's telephone and facsimile contact information directed to his firm's Winston-Salem, NC office").

## DISCUSSION

"The burden is on the plaintiff to establish . . . venue in the judicial district where the action is brought." IHFC Props., LLC v. APA Mktg., Inc., 850 F. Supp. 2d 604, 615 (M.D.N.C. 2012) (Schroeder, J.). Further, "in a case involving multiple defendants and multiple claims, the plaintiff bears the burden of showing that venue is appropriate as to each claim and as to each defendant." Hickey v. St. Martin's Press, Inc., 978 F. Supp. 230, 240 (D. Md. 1997) (citing, inter alia, Jarrett v. North Carolina, 868 F. Supp. 155, 158 (D.S.C. 1994)); accord Ross v. Digiola, Civil Action No. 11-1827, 2012 WL 72703, at *2 (E.D. La. Jan. 10, 2012) (unpublished) (citing, inter alia, 14D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3808 (3d ed. 1998)); Allstar Mktg. Grp., LLC v. Your Store Online, LLC, 666 F. Supp. 2d 1109, 1126 (C.D. Cal. 2009); City of Waco v. Schouten, 385 F. Supp.

2d 595, 599 (W.D. Tex. 2005); <u>Bearse v. Main St. Invs.</u>, 170 F. Supp. 2d 107, 116 (D. Mass. 2001).

"Courts decide questions of venue largely on the basis of the pleadings. . . . The Court is not obliged, however, to treat all allegations as true, no matter how speculative, <u>conclusory</u>, or lacking of necessary supporting factual allegations. Instead, . . ., a complaint must allege a <u>factual basis</u> for its legal claims." <u>Emjayco v. Morgan Stanley & Co., Inc.</u>, 901 F. Supp. 1397, 1400 (C.D. Ill. 1995) (internal citation omitted) (emphasis added); <u>see also</u> <u>Hansen-Moor Assocs., Inc. v. Allied B/J Trust</u>, No. 91-4192-C, 1992 WL 190714, at *4 (D. Kan. July 17, 1992) (unpublished) ("The plaintiff's conclusory allegation of venue in Kansas falls short of a well pled fact.").

"[If] venue [i]s improper . . ., transfer of [this] action [i]s required under 28 U.S.C. § 1406(a)." <u>LaVay Corp. v. Dominion Fed. Sav. & Loan Ass'n</u>, 830 F.2d 522, 526 (4th Cir. 1987). "Although a motion by one of the parties is ordinarily required for transfer, the district court may consider the possibility of transfer sua sponte . . . [but generally must afford] an opportunity to be heard before a decision is rendered." <u>Feller</u>, 802 F.2d at 729 n.7. Plaintiff now has had a chance to directly address the propriety of venue in this district, as well as the prospect of transfer to the Eastern District of North Carolina. After carefully reviewing the Complaint and Plaintiff's instant

Memorandum, the Court concludes (for reasons detailed below) that venue does not exist in this district and that the Court therefore must transfer this action.[8]

"In 1990, [the general federal venue statute] was amended to make venue proper in any 'judicial district in which <u>a substantial part</u> of the events or omissions giving rise to the claim occurred.'" <u>Mitrano v. Hawes</u>, 377 F.3d 402, 405 (4th Cir. 2004) (quoting 28 U.S.C. § 1391) (emphasis added).[9] "Under the amended statute, it is possible for venue to be proper in more than one judicial district." <u>Id.</u>; <u>see also</u> <u>AP Links, LLC v. Global Golf, Inc.</u>, Civil Action No. CCB-08-705, 2008 WL 4225764, at *5 (D. Md. Sept. 2, 2008) (unpublished) ("Plaintiffs need not show that their proposed venue is the 'best' venue, since venue may be proper in

---

[8] The operative statute permits dismissal for lack of venue, where the interests of justice fail to warrant transfer. <u>See</u> 28 U.S.C. § 1406(a). Given the nature of the allegations in the Complaint, transfer appears the better course in this case. <u>See</u> <u>Bearse</u>, 170 F. Supp. 2d at 117 ("Since venue is improper in [this district], I have the power to transfer the case pursuant to 28 U.S.C. § 1406(a). I find that it is in the interests of justice to do [so]. The [p]laintiff's allegations are serious . . . . It is far better that the allegations be resolved on the merits than on the basis that the [p]laintiff picked a forum in which to sue in which . . . no[] venue existed."); <u>see also</u> <u>Hansen-Moor</u>, 1992 WL 190714, at *5 (recognizing that "usual course is for the court to transfer the case pursuant to 28 U.S.C. § 1406(a)").

[9] As documented in the Background section, Subsection 1391(b) and Subsection 1391(e) (the two venue provisions potentially applicable in this case) each contains the same language vesting venue in any district where "a substantial part of the events or omissions giving rise to the claim occurred," 28 U.S.C. § 1391(b)(2) and (e)(1)(B), and Plaintiff seeks to base venue in this district on that language (<u>see</u> Docket Entry 5 at 3).

-19-

more than one district."). "[I]n determining whether events or omissions are sufficiently substantial to support venue under the amended statute, a court should not focus only on those matters that are in dispute or that directly led to the filing of the action. Rather, it should review the entire sequence of events underlying the claim." Mitrano, 377 F.3d at 405 (internal citation and quotation marks omitted).

"[Although] the civil venue statute permits venue in multiple judicial districts as long as 'a substantial part' of the underlying events took place in those districts, . . . [federal appellate courts have] caution[ed] district courts to take seriously the adjective 'substantial.'" Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 356-57 (2d Cir. 2005); see also Jenkins Brick Co. v. Bremer, 321 F.3d 1366, 1371 (11th Cir. 2003) ("The new language thus contemplates some cases in which venue will be proper in two or more districts. This does not mean, however, that the amended statute no longer emphasizes the importance of the place where the wrong has been committed. Rather, the statute merely allows for additional play in the venue joints, reducing the degree of arbitrariness in close cases."); Cottman v. Transmission Sys., Inc. v. Martino, 36 F.3d 291, 294 (3d Cir. 1994) ("[T]he current statutory language still . . . requir[es] that the events or omissions supporting a claim be 'substantial.'"). Moreover, federal appellate decisions have made clear that

"'[s]ubstantiality' for venue purposes is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." Daniel v. American Bd. of Emergency Med., 428 F.3d 408, 432-33 (2d Cir. 2005); see also Cottman, 36 F.3d at 294 ("The test for determining venue is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim . . . .'").

"That means for venue to be proper, significant events or omissions material to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere. It would be error, for instance, to treat the venue statute's 'substantial part' test as mirroring the minimum contacts test employed in personal jurisdiction inquiries." Gulf Ins., 417 F.3d at 357 (citing Jenkins Brick, 321 F.3d at 1372; Cottman, 36 F.3d at 294); see also Setra of N. Am., Inc. v. Schar, No. 1:03CV711, 2004 WL 1554195, at *8 (M.D.N.C. July 7, 2004) (unpublished) (recommendation of Eliason, M.J., adopted by Beaty, J.) ("[S]pecific jurisdiction looks at contacts which both *relate to or give rise* to a claim. Under the plain language of the venue statute, only events and omissions *giving rise* to a claim are considered." (emphasis in original) (internal footnote omitted)).

In this case, Plaintiff effectively attempts to predicate venue in this district on just such a "minimum contacts" approach. More specifically (as detailed in the Background section), Plaintiff seeks to maintain this action in this Court by citing instances in which, in preparing for the criminal case against Plaintiff, Wheeler made contact with witnesses (or their attorneys) in this district and the fact that the website for Wheeler's law firm advertised his practice as based in part in this district, at the time he submitted a declaration for use in post-trial proceedings in Plaintiff's criminal case. Although such allegations arguably might provide a basis for the Court to exercise personal jurisdiction over Wheeler, they fail to represent "a substantial part of the events or omissions giving rise to the claim[s]," 28 U.S.C. § 1391(b)(2) and (e)(1)(B), if one considers the totality of the material factual allegations in the Complaint (documented in the Background section) and "take[s] seriously the adjective 'substantial,'" Gulf Ins., 417 F.3d at 357.[10]

_____

[10] The only other matters occurring in this district catalogued by Plaintiff concern the fact that his "co-counsel in the Receivership . . . conducted his law practice at the time from his office located in Durham" (Docket Entry 5 at 6) and that, "[u]pon discovery of Hollenbeck's continuing investment fraud activities in connection with [Plaintiff's] private equity fund . . ., [Plaintiff] filed an interpleader action in this Court" (id. at 7). Those items, which lack any readily apparent material connection to Plaintiff's claims that Defendants obstructed justice and conspired, do not alter the Court's above-stated conclusion.

Put another way, "[a]lthough § 1391 no longer requires the [C]ourt to identify the single best venue for a plaintiff's claim[s], in this case [Plaintiff's] claim[s'] connections to [the Eastern District of North Carolina] so far predominate over those in [this district] as to make it impossible to conclude that a 'substantial part of the events or omissions giving rise to the claim[s]' occurred in this district." MTGLQ Investors, L.P. v. Guire, 286 F. Supp. 2d 561, 566 (D. Md. 2003) (internal citation omitted); see also Daniel, 428 F.3d at 434 (finding venue lacking where the "[p]laintiffs allege[d] a series of actions by [the] defendants . . . [and] the vast majority of these acts occurred outside the [district in which the plaintiffs filed the case]"). This conclusion largely flows from the fact, openly declared by the Complaint, that "[t]he objects of the Civil Conspiracy and Wheeler's acts of intentional obstruction of justice were targeted towards the criminal prosecution of [Plaintiff] in the EDNC." (Docket Entry 1, ¶ 17 (emphasis added).) Moreover, as outlined in the Background section, the Complaint consistently attacks purported decision-making by Wheeler (and, with much less specificity, alleged failures of oversight by Holding and Walker) that occurred in the Eastern District of North Carolina. Under these circumstances, venue does not lie in this district.

The Court finds support for that determination in a decision recently rendered in a closely analogous context by a neighboring

district court within the Fourth Circuit, <u>Mead v. Gaston Cnty.</u>
<u>Police Dep't</u>, No. 0:11CV3017JFA, 2012 WL 631850 (D.S.C. Feb. 27,
2012) (unpublished). In <u>Mead</u>, the plaintiff "allege[d] that he was
wrongfully arrested, incarcerated, [and] prosecuted for murder as
a result of the defendants' actions." <u>Id.</u> at *1. The complaint,
which identified the plaintiff as "a resident of South Carolina,"
<u>id.</u>, "allege[d] that [the body of] his girlfriend, . . . a resident
of Gaston County, North Carolina[,] . . . was found in the remains
of her home after a fire. At the time of her death, [she] was
pregnant with a child identified by DNA to be a match with [the]
[p]laintiff." <u>Id.</u> It further "allege[d] that the defendants came
to his house in South Carolina to gather evidence and that they
interviewed witnesses in South Carolina . . . [and] conducted
several searches in South Carolina . . . ." <u>Id.</u>

   The district court in South Carolina ruled that, "[t]hough
some action did take place in [its] district, <u>the overwhelming</u>
<u>majority of actions occurred in Gaston County, North Carolina</u>. The
<u>core allegations in th[e] case stem[med] from</u> an allegedly
mishandled investigation — <u>an investigation that was directed from</u>
<u>North Carolina and in which North Carolina defendants made the key</u>
<u>decisions in North Carolina</u>." <u>Id.</u> at *2 (emphasis added).
Additionally, the <u>Mead</u> Court emphasized that "the subsequent
<u>indictment</u>, incarceration, <u>and trial all took place in North</u>
<u>Carolina</u>." <u>Id.</u> (emphasis added). Ultimately, "[t]hough some

-24-

investigation did occur in South Carolina, the court f[ound] that those activities d[id] not constitute a substantial part of the events giving rise to [the plaintiff's] claim[s]. As a result, the court f[ound] that venue in the District of South Carolina [wa]s improper." Id.

Similarly, in this case, "the overwhelming majority of actions occurred in [the Eastern District of North Carolina]," id., "[t]he core allegations in th[e] case stem from an allegedly mishandled investigation . . . directed from [the Eastern District of] North Carolina," id., "[Eastern District of] North Carolina defendants made the key decisions in [the Eastern District of] North Carolina," id., and the "indictment . . . and trial all took place in [the Eastern District of] North Carolina," id. Accordingly, like the district court in Mead, this Court holds that, "[t]hough some investigation did occur in [this district], . . . those activities d[id] not constitute a substantial part of the events giving rise to [Plaintiff's] claim[s] . . . [and thus] finds that venue in th[is] [d]istrict . . . is improper." Id.

## CONCLUSION

Venue does not exist in this district, but clearly does exist in the Eastern District of North Carolina.[11]

---

[11] In his instant Memorandum, Plaintiff "concedes that venue is proper in the EDNC" (Docket Entry 5 at 8), but indicates that he would prefer for this action to proceed in the Northern District of Georgia "in the event the Court [is] disinclined to permit venue to
(continued...)

**IT IS THEREFORE ORDERED** that this action is transferred to the United States District Court for the Eastern District of North Carolina for further proceedings.

**IT IS FURTHER ORDERED** that this order of transfer is stayed until January 27, 2014.  If Plaintiff timely objects to the order of transfer, the stay shall continue beyond January 27, 2014, until disposition of such objection(s) or other order of the Court.  If Plaintiff fails to file a timely objection to the order of

---

[11](...continued)
remain in the MDNC" (<u>id.</u> at 9).  Although (as set forth in the Background section) Plaintiff has alleged that some pertinent conduct occurred in the Northern District of Georgia and has claimed citizenship (but not current residence) in Georgia, the Court lacks certainty that venue exists in the Northern District of Georgia.  Moreover, Plaintiff's objection to this case proceeding in the Eastern District of North Carolina appears frivolous.  Specifically, he has asserted that "there is a practical obstacle to achieving a fair adjudication of his claims <u>in the same district where the judges</u> and government prosecutors <u>have been subject of the Fourth Circuit's ire driven by some of the same factual occurrences that are alleged in [Plaintiff's] [C]omplaint</u>."  (<u>Id.</u> at 11 (emphasis added).)  However, Plaintiff has failed to cite any support for the contention that the Fourth Circuit ever criticized the performance (let alone the fairness) of any judge of the United States District Court for the Eastern District of North Carolina regarding matters relevant to this action.  (<u>See id.</u> at 1-11.)  In fact, the Fourth Circuit praised the district judge who handled Plaintiff's criminal case, <u>see</u> <u>Bartko</u>, 728 F.3d at 334 ("[Plaintiff] then filed four motions for a new trial.  The district court denied them all in a comprehensive and well-reasoned 120-page order."), and "urge[d] the district court in the Eastern District of North Carolina to meet with the United States Attorney's Office of that district to discuss improvement of its discovery procedures," <u>id.</u> at 342, steps the Fourth Circuit surely would not have taken if it disapproved of the conduct of the United States District Court for the Eastern District of North Carolina or lacked confidence in the ability of that court to properly address subjects implicated by Plaintiff's Complaint.  Under these circumstances, this Court finds no basis to refrain from transferring this action to the United States District Court for the Eastern District of North Carolina.

transfer, the Clerk of this Court shall send the entire record of this action to the Clerk of the United States District Court for the Eastern District of North Carolina on January 28, 2014.

/s/ L. Patrick Auld

**L. Patrick Auld**
**United States Magistrate Judge**

January 3, 2013